UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━

JENNIFER MERROW,

                    Plaintiff,              6:16-CV-06267 MAT

     v.

RAELLE ASHLEY,                     DECISION
TIMOTHY ROMACH,                and ORDER
RONALD W. HARLING,
PATRICK O'FLYNN,
PAUL MACCARONE,
ERIC SCHULTZ, and
CLAYTON HILLEGEER,

                    Defendants.

━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━

## **INTRODUCTION**

Plaintiff Jennifer Merrow ("Plaintiff") brings this action against defendants Raelle Ashley, Timothy Romach, Ronald W. Harling, Patrick O'Flynn, Paul Maccarone, Eric Schultz, and Clayton Hillegeer, alleging violations of 42 U.S.C. §§ 1983 and 1988, and the Fourth, Eighth, and Fourteenth Amendments to the United States Constitution.  Docket No. 14.

Presently before the Court is Defendants' motion for summary judgment, pursuant to Rule 56 of the Federal Rules of Civil Procedure, contending that there are no genuine issues of material fact as to Plaintiff's claims. Docket No. 25.  For the reasons set forth below, Defendants' motion for summary judgment is granted in its entirety.

## BACKGROUND

Unless otherwise noted, the following facts are taken from Defendants' Statement of Undisputed Facts (Docket No. 25-2 at 11), the majority of which is undisputed. Plaintiff did not submit her own Statement of Undisputed Facts; however, her memorandum of law submitted in opposition to summary judgment contains a section entitled, "Facts in Dispute." Docket No. 27 at 2. In that section of her memorandum, Plaintiff states that she specifically disputes paragraphs twenty-one through twenty-five of Defendants' Statement of Undisputed Facts, which describe events occurring in the Booking Scan Room at the Monroe County Jail. *Id.*

This case stems from an incident on December 19, 2014, when Plaintiff was arrested by a Rochester police officer for driving while intoxicated. Docket No. 25-2 at ¶ 10. Following her arrest, Plaintiff was transported to the Monroe County Jail. *Id.* Plaintiff was processed in the Booking Scan Room by defendant deputies Ashley and Romach. *Id.* at ¶ 13. At that time, the Monroe County Jail had in place a video recording system, which included over 300 cameras installed throughout the jail. *Id.* at ¶ 14. The video recording system captured an incident involving Plaintiff in the Booking Scan Room on the evening of December 19, 2014. *Id.* at ¶ 16. The video depicting Plaintiff, which spans from the time she entered the jail until she left, was preserved and submitted to the

Court in support of Defendants' motion for summary judgment.  *Id*. at ¶ 17.

The following facts contained at paragraphs 21-25 of Defendants' Statement of Undisputed Facts are in dispute. Defendants claim that the incident involving Plaintiff began when Plaintiff kicked defendant Ashley as defendant Ashley walked toward Plaintiff at a normal pace.  *Id*. at ¶ 21.  However, Plaintiff contends that she cooperated and complied with instructions from defendants Ashley and Romach.  Docket No. 27 at 2.  Plaintiff further contends that, as shown in video footage from the incident, when Plaintiff had difficulty putting on her sweatshirt, defendant Ashley "rapidly emerg[ed] from the bottom left corner of the frame and appear[ed] to attack plaintiff.  At about that same time, plaintiff appear[ed] to lift up her leg, as though in a defensive posture."  *Id*. at 3.  In other words, Plaintiff contends that defendant Ashley was the initial aggressor, which precipitated the use of force incident.

Defendants further contend that during the incident, Plaintiff kicked defendant Ashley, wrapped her arms around Ashley's head, pulled Ashley's head to her chest, kicked defendant Romach, and that Plaintiff fought and resisted attempts to place her in handcuffs.  Docket No. 25-2 at ¶ 22.  Defendants claim that after Plaintiff was placed in handcuffs, she attempted to kick defendant Ashley for a second time.  *Id*. at ¶ 23.

According to Defendants, the Sheriff's Office investigated the December 19, 2014 incident and determined that each of the defendant deputies complied with Article 35 of the New York State Penal Law, and the Monroe County Sheriff's Office Rules and Regulations/General Orders. Docket No. 25-2 at ¶ 25.

Plaintiff injured defendant Ashley, and was charged with both assaulting defendant Ashley and driving while intoxicated. Plaintiff was convicted of both charges following a jury trial. *Id.* at ¶¶ 27-28.

In her amended complaint, Plaintiff further alleges that as a result of the attack by the defendant deputies, she lost consciousness and woke up in a holding cell. Plaintiff further alleges that her clothes were removed by the defendant deputies, and that the defendant deputies forced Plaintiff to take various poses and photographed her using their cell phones. *See* Docket No. 14 at ¶¶ 14-15.

In their Statement of Undisputed Facts, Defendants contend that Plaintiff was housed in a cell in the female holding corridor in the Booking area of the jail, and video submitted to the Court covers the time Plaintiff was housed in the holding cell. Docket No. 25-2 at ¶¶ 31-32. Defendants contend that at no time did anyone enter the cell in which Plaintiff was housed. *Id.* at ¶ 33. Further, Defendants contend that, pursuant to Jail Bureau General Order 05-11, no personal cell phones were permitted in the Booking

area, and none of the defendant deputies brought a personal cell phone into the jail on December 19, 2014. *Id*. at ¶¶ 34-35. Defendants also contend that they did not remove Plaintiff's clothes or take photographs of her while she was naked. *Id*. at ¶ 36. The only person who took any photographs of Plaintiff was Jeffrey LaMartina, a sergeant with the Monroe County Sheriff's Office. *Id*. at ¶ 42. Sergeant LaMartina took the photographs of Plaintiff with a jail-issued digital camera, and in keeping with the Sheriff's Office policy that photographs be taken of Plaintiff because she was involved in "subject management incident" while at the jail. *Id*. at ¶¶ 41-42. To Sergeant LaMartina's knowledge, no other individuals took photographs of Plaintiff while she was in the jail. *Id*. at ¶ 45.

Karen Hamm, a registered nurse working at the Monroe County Jail on December 19, 2014, observed Plaintiff in the female holding cell in Booking. *Id*. at ¶ 46. Nurse Hamm asked Plaintiff if she had any injuries, to which Plaintiff responded "no." Nurse Hamm observed Plaintiff sitting on the toilet in her cell, naked from the waist up and rubbing her breasts. *Id*. at ¶ 49.

Based on the information contained in her memorandum of law in opposition to Defendants' motion for summary judgement, Plaintiff does not appear to dispute Defendants' factual assertions regarding the events that allegedly occurred in the holding cell. Rather, Plaintiff's argument relates to the altercation that occurred in

the Booking Scan Room. Specifically, Plaintiff contends that "there remains genuine issues of material fact as to plaintiff's excessive use of force claim. At its core, the factual dispute surrounds an incident that occurred over the span of approximately one and a half minutes between 7:40 and 7:41 PM on December 19, 2014 in the Booking Scan Room of the Monroe County Jail." Docket No. 27 at 2.

## PROCEDURAL HISTORY

Plaintiff filed the instant action on April 22, 2016 (Docket No. 1), and Defendants filed an answer on June 23, 2016 (Docket No. 4). Plaintiff filed an amended complaint on March 27, 2017, which adds defendants Maccarone, Schultz, and Hillegeer, and alleges three causes of action, including: (1) excessive use of force, in violation of the Fourth, Eighth, and Fourteenth Amendments, against defendants Ashley, Romach, Maccarone, Hillegeer, and Schultz; (2) supervisory liability, against defendants O'Flynn and Harling; and (3) a *Monell* claim, against defendant O'Flynn. Docket No. 14. Defendants filed an answer to the amended complaint on April 28, 2017. Docket No. 17.

On October 12, 2018, Defendants filed a motion for summary judgment. Docket No. 25. Plaintiff responded on November 27, 2018, and Defendants filed a reply on December 7, 2018. Docket Nos. 27, 28.

**DISCUSSION**

## I.  Summary Judgment Standard

Federal Rule of Civil Procedure 56(c) states that summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  The court's role in determining a motion for summary judgment is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.*  When considering a motion for summary judgment, the court must draw inferences from underlying facts "in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986).

## II.    Supervisory Liability and *Monell* Claims

Plaintiff's second and third causes of action are for supervisory liability against defendants Harling and O'Flynn, and *Monell* liability against defendant O'Flynn.  Docket No. 14. Defendants argue, with regard to Plaintiff's claim for supervisory liability, there is no proof that any of the defendant deputies had poor training or lacked supervision.  Docket No. 25-35 at 16.  With regard to Plaintiff's claim for *Monell* liability, Defendants

contend that Plaintiff did not sue the County of Monroe, and there is no evidence that defendant O'Flynn established or executed a policy that violated Plaintiff's constitutional rights, as required to establish *Monell* liability. *Id*. at 19-20.

In her memorandum in opposition to Defendants' motion for summary judgment, Plaintiff concedes that "there is insufficient evidence to support plaintiff's claims of supervisory liability as against former Sheriff O'Flynn or former jail superintendent Harling, or to support a *Monell* claim against O'Flynn." Docket No. 27 at 1.

The Court agrees that the record is devoid of any evidence suggesting that there is a material issue of fact regarding Plaintiff's claims for supervisory and *Monell* liability. With regard to establishing supervisory liability, "[a] supervisor may not be held liable under section 1983 merely because his subordinate committed a constitutional tort. . . . [Rather], a supervisor may be found liable for his deliberate indifference to the rights of others by his failure to act on information indicating unconstitutional acts were occurring or for his gross negligence in failing to supervise his subordinates who commit such wrongful acts, provided that the plaintiff can show an affirmative causal link between the supervisor's inaction and her injury." *Poe v. Leonard*, 282 F.3d 123, 140 (2d Cir. 2002) (internal quotations

and citations omitted). There has been no such showing here by Plaintiff.

With regard to *Monell* liability, a municipal policy or custom can be established by alleging "(1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question; (3) a practice so consistent and widespread that it constitutes a custom or usage sufficient to impute constructive knowledge of the practice to policymaking officials; or (4) a failure by policymakers to train or supervise subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees." *Torres v. N.Y.C. Dep't of Educ.*, No. 18-CV-2156(NGG)(RER), 2019 WL 2124891, at *3 (2d Cir. May 14, 2019) (citation omitted). Based on the record before the Court, Plaintiff has failed to present any evidence establishing that *Monell* liability should be imposed.

Because there is no genuine issue of material fact as to Plaintiff's claims for supervisory and *Monell* liability, Defendants' motion for summary judgment as it pertains to Plaintiff's claims for supervisory and *Monell* liability is granted, and the second and third causes of action in the amended complaint are dismissed.

## III. <u>Excessive Use of Force Claim</u>

"To state a valid claim under 42 U.S.C. § 1983 [("§ 1983")], the plaintiff must allege that the challenged conduct (1) was attributable to a person acting under color of state law, and (2)

deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States." *Whalen v. Cnty. of Fulton,* 126 F.3d 400, 405 (2d Cir. 1997) (citing *Eagleston v. Guido,* 41 F.3d 865, 875-76 (2d Cir. 1994)). Furthermore, the plaintiff must demonstrate that each defendant personally participated in the deprivation of his constitutional rights. *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009) ("In a § 1983 suit[,]. . . masters do not answer for the torts of their servants[, and] . . . the term 'supervisory liability' is a misnomer. Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct."). In other words, to warrant relief under § 1983, the plaintiff must prove that each named defendant individually committed some action or omission that violated the plaintiff's federal rights. *See id.* at 676.

Although Plaintiff alleges violations of the Fourth, Eighth, and Fourteenth amendments, her claim is properly brought pursuant to the Fourth Amendment, as her allegations concern events occurring during the course of her arrest and booking. *See, e.g., McFadden v. City of N.Y.C.*, No. 12-CV-5624(RRM)(VVP), 2012 WL 6167006, at *3 (E.D.N.Y. Dec. 11, 2012); *Parks v. Segar*, No. 3:09CV1162(HBF), 2012 WL 4051833, at *3 (D. Conn. Sept. 13, 2012).

"[A]pplication of force is excessive, in violation of the Fourth Amendment, if it is 'objectively unreasonable in light of the facts and circumstances confronting them, without regard to the officers' underlying intent or motivation.'" *Gersbacher v. City of*

*N.Y.*, 134 F. Supp. 3d 711, 723 (S.D.N.Y. 2015) (quoting *Carpenter v. City of N.Y.*, 984 F. Supp. 2d 255, 267 (S.D.N.Y. 2013)). Such an inquiry is necessarily fact-specific. *Amnesty America v. Town of West Hartford*, 361 F.3d 113, 123 (2d Cir. 2004). "In determining whether the force used in a given arrest is reasonable, courts pay careful attention to the facts and circumstances of each case, including (1) the severity of the crime at issue, (2) whether the arrestee poses an immediate threat to the safety of the officers or others, and (3) whether the arrestee is actively resisting arrest or attempting to flee." *Gersbacher*, 134 F. Supp. 3d at 723.

While the excessive force inquiry undoubtedly is fact-specific, "[c]ourts may decide excessive force claims. . . on motions for summary judgment." *Usavage v. Port Auth. of N.Y. & N.J.*, 932 F. Supp. 2d 575, 593 (S.D.N.Y. 2013) (citing *Ferraresso v. Town of Granby*, 646 F. Supp. 2d 296, 306 (D. Conn. 2009) ("While reasonableness is traditionally a question of fact for the jury, 'defendants can still win on summary judgment if the district court concludes, after resolving all factual disputes in favor of the plaintiff, that the officer's use of force was objectively reasonable under the circumstances.'") (citation omitted)).

In her amended complaint, Plaintiff alleges two specific instances during which the defendant deputies used force that was "objectively unreasonable" and/or "constitute[d] cruel and unusual punishment." The first instance involves the events that allegedly took place in the Booking Scan Room, and the second instance

involves the events that allegedly took place in her holding cell. *See* Docket No. 14 at ¶¶ 13-18.

## A. <u>Alleged Use of Force in the Holding Cell</u>

Regarding the events that allegedly took place in the holding cell, Plaintiff concedes that "after considerable discovery, there is scarce, if any, evidence to support plaintiff's claims that any Monroe County Sheriff's Office employees removed plaintiff's clothing, or took photographs of her while she was undressed." Docket No. 27 at 1. The Court agrees.

At her deposition, Plaintiff admitted that she had no recollection of any person removing her clothing. Docket No. 25-25 at 9:19-21. Plaintiff further testified that she "honestly [didn't] know" who removed her shirt, and that it "possibly" could have been her. *Id*. at 9:14-15. Plaintiff also testified that she could not identify which defendant deputies were looking at her naked in the holding cell. *Id*. at 10:17-11:8. Plaintiff stated that she had no recollection of being moved from the Booking Scan Room to the holding cell, and she had no knowledge or information that any of the named defendant deputies removed her clothing. *Id*. at 13:5-9, 21-24.

Regarding her claim that the defendant deputies took photographs of her while she was naked, Plaintiff testified that she was aware that, at her criminal trial, the prosecution presented two photographs taken of her while she was in the holding cell; therefore, "[i]t just makes sense to me that since the camera was there that they would have taken these pictures," but Plaintiff

admitted that she "[didn't] know for a fact." *Id*. at 15:11-22.

Plaintiff was shown the two photographs from her trial; she agreed

that these photographs showed her in the holding cell, stated that

she was not aware of any other photographs depicting her in the

holding cell, and admitted that she had no knowledge of any person

taking additional photographs. *Id*. at 16:5-17:13. Rather,

Plaintiff testified that she assumed that someone was taking

photographs of her because she was being asked to pose. *Id*. at

18:3-13.

At her deposition, Nurse Hamm testified that she was asked by

one of the deputies to do an "urgent assessment" of Plaintiff,

which required her to "observe and assess" Plaintiff, and "write up

a document." Docket No. 25-30 at 5:7-16. Nurse Hamm observed

Plaintiff on two occasions, including as she was being transported

from the Booking Scan Room, and again when Plaintiff was in the

holding cell. *Id*. at 6:2-7. Nurse Hamm testified that she

observed Plaintiff, who was naked from the waist up. *Id*. at 8:2-4.

Plaintiff stated that she did not have any injuries. *Id*. at 8-9.

Two other deputies, one of whom Nurse Hamm recalled being Corporal

LaMartina, were also observing Plaintiff in the holding cell. *Id*.

at 10:17-24.

The defendant deputies also submit declarations addressing the

events that allegedly occurred in the holding cell, *see* Docket Nos.

25-3, 25-5, 25-8, 25-9, and 25-10. The declarations provide that

the defendant deputies did not bring cell phones into the security

envelope of the jail on December 19, 2014,[1] did not enter Plaintiff's cell or remove her clothes, and did not take photographs of Plaintiff using a cell phone while she was in the jail.

Based on Plaintiff's own concession that there is no evidence supporting her allegations regarding the defendant deputies removing her clothing and taking photographs of her while she was naked, as well as the Court's review of the above-mentioned evidence, there is no genuine issue of material fact regarding Plaintiff's claim that the defendants used excessive force against her in the holding cell. There is no evidence supporting Plaintiff's claims in this respect. Rather, Plaintiff's claims are based on pure speculation, which is not sufficient to survive a motion for summary judgment. Accordingly, any claim of excessive force based on events allegedly occurring in Plaintiff's holding cell in the Monroe County Jail on December 19, 2014, are dismissed.

**B.** **Alleged Use of Force in the Booking Scan Room**

As noted above, Plaintiff's opposition to summary judgment is focused on her claim that the defendant deputies used excessive force against her in the Booking Scan Room. The Court has reviewed all of the material submitted in connection with the motion for summary judgment, and concludes that summary judgment in favor of Defendants is appropriate.

---

[1] Defendants also submit a document stating that as of June 27, 2011, all personal cellular telephones were banned from the security envelope of the jail. *See* Docket No. 25-26.

Defendants first submit declarations from defendants Ashley, Hillegeer, Maccarone, Romach, and Schultz, which address the events occurring on December 19, 2014. *See* Docket Nos. 25-3, 25-5, 25-8, 25-9, and 25-10. The declarations, taken together, are consistent and provide that defendants Ashley, Hillegeer, Maccarone, Romach, and Schultz were working at the Monroe County Jail on December 19, 2014, and had contact with Plaintiff. Defendants Ashley and Romach processed Plaintiff in the Booking Scan Room. Plaintiff appeared to be intoxicated, and defendant Ashley had to repeat instructions for Plaintiff until she complied. Plaintiff became agitated and verbally abusive, and therefore defendant Ashley wanted to place Plaintiff in handcuffs, to de-escalate the situation. As defendant Ashley walked toward Plaintiff at a normal pace, Plaintiff attempted to kick defendant Ashley with her right foot. Because Plaintiff became physically aggressive, defendants Ashley and Romach used defensive tactics to gain control of the situation.

Defendants Hillegeer, Maccarone, and Schultz responded to the Booking Scan Room, to assist defendants Ashley and Romach. The defendant deputies instructed Plaintiff, on several occasions, to stop resisting. At one point, Plaintiff pulled defendant Ashley's head, bit her finger, and grabbed her hair. After hearing defendant Ashley say that Plaintiff was biting her, defendant Romach "delivered a straight punch to [Plaintiff's] facial area which then allowed Ashley to free her finger from [Plaintiff's] mouth." Defendant Ashley eventually resorted to the use of ASR (Aerosol Subject Restraint) to gain control of Plaintiff.

-15-

Defendant Ashley sustained injuries to her knee, finger, head, and neck.

The incident reports submitted by Defendants concerning the events of December 19, 2014, are consistent with these accounts. *See* Docket Nos. 25-17, 25-18, 25-19, 25-20, and 25-21. In her response papers, Plaintiff does not identify any inconsistences among the defendant deputies' accounts of the December 19, 2014 incident.

Defendants also submit videotaped footage from inside the Monroe County Jail, which corroborates the above-described account of the incident. Docket No. 25-15. The video footage is accompanied by a declaration from Gerald Grimshaw, who in 2014 had responsibility for reviewing and preserving the video footage from the use of force incident involving Plaintiff. *See* Docket No. 25-4. The declaration provides that Mr. Grimshaw "preserved all video depicting [Plaintiff] from the time she entered the Monroe County jail until the time she left." *Id.* at ¶ 8. Plaintiff does not make any claim challenging the authenticity or accuracy of the video footage.

There are two videos depicting the incident in the Booking Scan Room, each of which shows the incident from a different view. Neither of the videos have sound. The video titled "036-Booking Scan Room S-105-20141219.avi," depicts the incident from the view of a camera placed in the Booking Scan Room. The video is stamped with the date (December 19, 2014) and time, and the portion of the video depicting the incident begins at approximately 19:40. The

video depicts Plaintiff and defendant Romach in the bottom left of the screen, with Plaintiff attempting to put on her sweatshirt, which she had just removed from the scanner. Defendant Ashley appears in the bottom left of the screen, walking toward Plaintiff. The events transpire quickly; however, the video does not show defendant Ashley lunging at Plaintiff, as Plaintiff testified at her deposition. Rather, the video depicts Plaintiff kick defendant Ashley with her right leg, and defendant Ashley reaching for Plaintiff. Defendant Ashley responds by delivering a kick with her right leg, after which the remaining defendant deputies assist defendant Ashley in gaining control of Plaintiff. As explained by the defendant deputies in their declarations, the video also depicts Plaintiff continuing to resist their efforts to gain control of her.

The next video, titled "039 Booking Observation Cells 20141219-193901.avi," depicts the incident from the hallway outside of the Booking Scan Room. This video is also stamped with the date and time of the incident, and the relevant portion of the video provides more footage of defendant Ashley leading up to the use of force. The video shows defendant Ashley approach Plaintiff, walking at a normal speed and with her hands down. Plaintiff then delivers a kick with her right leg. The video clearly shows Plaintiff's leg appear to connect with defendant Ashley's hip before any of the deputies, including defendant Ashley, use force against Plaintiff.

Defendants also submit the declaration of Matthew Kreuzer, a Road Patrol Sergeant with the Monroe County Sheriff's Office, and a defensive tactics instructor. *See* Docket No. 25-6. Sergeant Kreuzer, at the request of defendants, reviewed the reports associated with the December 19, 2014 incident involving Plaintiff, as well as the video documenting Plaintiff's time at the jail, and provided an expert opinion that, "[b]ased on my review of the foregoing and my expertise in the use of force and defensive tactics, it is my opinion that none of the deputies who are named as defendants in this action used excessive force." *Id*. at ¶ 19. Sergeant Kreuzer also opined that the actions taken by defendants was a proper and reasonable response to Plaintiff's aggression and in keeping with their training on defensive tactics. *Id*. at ¶¶ 20-27.

Defendants further submit Plaintiff's Certificate of Conviction for assault while in a correctional facility, based on the events of December 19, 2014. Docket No. 25-24. The certificate provides that Plaintiff was convicted of this charge following a jury trial on November 16, 2015. *Id*.

Plaintiff's deposition testimony regarding significant portions of the December 19, 2014 incident is unclear. *See, e.g.*, Docket No. 25-25 at 7:5-8 (regarding the incident in the Booking Scan Room, Plaintiff testified that she "[didn't] remember" what defendant Romach was doing when she was punching Plaintiff in the face). Regarding defendant Maccarone, Plaintiff identified him as one of the deputies who rushed into the Booking Scan Room, but that

because she had been maced, she did not "know who touched me where," and that she did not have any knowledge of defendant Maccarone using force on her. *Id*. at 10:5-14. Plaintiff testified that defendant Hillegeer also responded to the Booking Scan Room, but that she did not have any personal knowledge or information as to anything defendant Hillegeer did to her. *Id*. at 11:12-22. Similarly, while Plaintiff identified defendant Schultz as one of the deputies responding to the Booking Scan Room, she did not have any personal knowledge of anything defendant Schultz did to her. *Id*. at 11:24-12:4.

Plaintiff testified that at the time of her arrest on December 19, 2014, she asked the arresting officers to take her to the jail. *Id*. at 5:17-18. Plaintiff also conceded that, in response to the alleged attack, she wrapped her arms and legs around defendant Romach, to stop defendant Romach from punching her. *Id*. at 7:11-25. Plaintiff also grabbed defendant Romach's hair. *Id*. at 8:2-17.

In opposition to summary judgment, Plaintiff submits portions of three deposition transcripts, including depositions from defendants Ashley and Romach, and her own deposition. These deposition transcripts do not raise any issue of material fact. Rather, they are consistent with the above-mentioned evidence submitted by the Defendants.

At their depositions, defendants Ashley and Romach explained that Plaintiff was slow to follow orders, but compliant, in the Booking Scan Room; however, Plaintiff became agitated and swore at

defendant Ashley.  Docket No. 27-1 at 7:20-25, 14:16-20.  At that
time, defendant Ashley asked Plaintiff to turn around and put her
hands behind her back, so that she could handcuff Plaintiff.  *Id*.
at 14:21-15:4.  Defendant Ashley testified that she believed it was
necessary to handcuff Plaintiff in order to de-escalate the
situation.  *Id*. at 24:15-20.  As defendant Ashley stepped in to
handcuff Plaintiff, Plaintiff attempted to kick defendant Ashley
with her right leg.  *Id*. at 15:1-4; *see also* Docket No. 27-2 at
3:19-4:2-4, 6:9-12, 9:2-5.

In support of her claims, Plaintiff testified that defendant
Ashley suddenly "lunged" at her while Plaintiff was trying to put
her sweatshirt on.  Docket No. 27-3 at 3:17-25.  Plaintiff
testified that she was "scared" and "caught off-guard." *Id*. at 4:3-
4.  Plaintiff further testified that while she "couldn't really see
through the sweatshirt," when she saw defendant Ashley coming at
her, "she looked like she was going to hurt me, like, seriously."
*Id*. at 4:15-19.  Plaintiff also testified that defendant Ashley
"said something like, she's had enough.  She's going to get me now
or something.  But I don't recall exactly what she said.  It was,
like, a threatening type - I don't want to say 'threatening.'" *Id*.
at 4:20-24.  Plaintiff contends that as she saw defendant Ashley
coming toward her with her arms in the air, Plaintiff "put my leg
up to try to put distance between us.  I didn't intentionally try
to kick her or hurt her at all.  It was just . . . an involuntary
instinct." *Id*. at 5:10-25. Plaintiff testified that she concluded
that defendant Ashley was going to hit her because she was "moving

fast with her arms out," and that defendant Ashley had an "aggressive . . . pissed-off face." *Id*. at 6:20-22, 7:3-4.

In light of the evidence submitted by Defendants, the Court finds that no reasonable juror could conclude that there is a genuine dispute as to any issue of material of fact regarding the events taking place in the Booking Scan Room on December 19, 2014. Defendants have provided consistent, sworn accounts of the December 19, 2014 incident between Plaintiff and the defendant deputies, which reflect that the defendant deputies reasonably responded to aggression by Plaintiff. The video footage of Plaintiff in the jail further corroborates these accounts. Additionally, Defendants have submitted an expert opinion that the their use of force in the Booking Scan Room was reasonable under the circumstances.

Plaintiff's submissions do not show a genuine issue of material fact. Plaintiff's case is based on little more than her own version of events, which paints defendant Ashley as the initial aggressor who, unprovoked, used force against Plaintiff in the Booking Scan Room. The Court is cognizant that "[a]ssessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment." *Rule v. Brine, Inc.*, 85 F.3d 1002, 1011 (2d Cir. 1996). "However, when the facts alleged are so contradictory that doubt is cast upon their plausibility, [the court is] authorized to pierce the veil of the complaint's factual allegations, dispose of [s]ome improbable allegations, and dismiss the claim." *Aziz Zarif Shabazz v. Pico*,

994 F. Supp. 460, 470 (S.D.N.Y. 1998) (internal quotations and citations omitted) (second alteration in original).

Plaintiff's account of the events occurring on December 19, 2014 is squarely contradicted by the evidence, including the above-described video footage in the Booking Scan Room. In other words, no reasonable juror, after viewing the video evidence, could believe Plaintiff's version of events. *Scott v. Harris*, 550 U.S. 372, 378-80 (2007) (where videotape clearly contradicted the plaintiff's version of events, and there were no allegations that the videotape was doctored or altered in any way, a court should view the facts in the light depicted by the videotape; "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."); *Davis v. Klein*, No. 11-CV-4868(ENV), 2013 WL 5780475, at *4 (E.D.N.Y. Oct. 25, 2013) (dismissing the plaintiff's excessive force claim, "where undisputed medical records directly and irrefutably contradict a plaintiff's description of his injuries, no reasonable jury could credit plaintiff's account of the happening," and the record was "utterly devoid of evidence of any kind supporting [the plaintiff's] description of his injuries - other than his own claims."). In other words, "[Plaintiff's] version of events is so utterly discredited by the record that no reasonable jury [would] . . . believe[] h[er]." *Scott*, 550 U.S. at 380.

It is undisputed that Plaintiff attempted to kick defendant Ashley, wrapped her arms and legs around defendant Romach, and pulled defendant Romach's hair. Defendants have submitted a statement from an expert, opining that the defendant deputies' response to Plaintiff's actions was reasonable and not excessive. Plaintiff does not submit any evidence contradicting this opinion. Viewing the evidence in the light most favorable to Plaintiff, the Court finds that Defendants are entitled to summary judgment in their favor as to Plaintiff's claim that they used excessive force against her in the Booking Scan Room of the Monroe County Jail.

## **CONCLUSION**

For the reasons set forth above, the Court grants Defendants' motion for summary judgment (Docket No. 25). The amended complaint (Docket No. 14) is dismissed in its entirety, and the Clerk of Court is directed to close the case.

**ALL OF THE ABOVE IS SO ORDERED.**

S/Michael A. Telesca

_____
    MICHAEL A. TELESCA
United States District Judge

Dated:     June 20, 2019
           Rochester, New York